Theodore H. Frank (SBN 196332)
HAMILTON LINCOLN LAW INSTITUTE
1629 K Street NW, Suite 300
Washington, DC 20006
Voice: 703-203-3848
Email: ted.frank@hlli.org

*Attorneys for Plaintiff Ananda Gupta,*
*as Representative for Rajan Gupta.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| RAJAN GUPTA, a minor, by and through his next friend ANANDA GUPTA, <br><br> Plaintiffs, <br><br> v. <br><br> ROB BONTA, in his official capacity as Attorney General of the State of California, <br><br> Defendant. | Case No. 3:21-cv-09045-EMC <br> Hon. Edward M. Chen, Courtroom 5 <br><br> DATE: January 20, 2022 <br> TIME: 1:30 pm |

**PLAINTIFF ANANDA GUPTA'S NOTICE OF MOTION, MOTION, AND MEMORANDUM FOR PRELIMINARY INJUNCTION**

## NOTICE OF MOTION

**TO ALL PARTIES HEREIN AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on January 20, 2022, at 1:30 p.m. or as soon thereafter as this matter may be heard in Courtroom 5 on the 17th Floor of the United States District Court, Northern District of California, San Francisco Division, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiff Ananda Gupta hereby moves, pursuant to Federal Rule of Civil Procedure Rule 65 for a preliminary injunction to prohibits Defendant Rob Bonta, in his official capacity as Attorney General of the State of California, from enforcing Cal. Penal Code § 594.39.

Good cause exists for the granting of this motion, as set forth in the accompanying memorandum of points and authorities and the verified complaint and exhibits attached thereto. Pursuant to L.R. 7-2(c), Gupta attaches a separate proposed order.

# **TABLE OF CONTENTS**

TABLE OF CONTENTS .............................................................................................................. iii

TABLE OF AUTHORITIES ...................................................................................................... iv

MEMORANDUM OF POINTS AND AUTHORITIES ......................................................... 1

Introduction ................................................................................................................................. 1

Factual Background ..................................................................................................................... 1

Legal Standard for Preliminary Injunction ........................................................................... 2

I.      Gupta is likely to succeed on the merits because California Penal Code section
        594.39 is content-based, and even if content-neutral, is not narrowly tailored .............. 3

        A.      Section 594.39 is content-based and cannot satisfy strict scrutiny ...................... 3

        B.       Even if content-neutral, Section 594.39 is not narrowly-tailored, nor does
                it leave open ample alternative channels of communication. ............................... 9

II.     Gupta will suffer irreparable harm if the Defendant is not enjoined from
        enforcing Section 594.39. ............................................................................................... 17

III.    The balance of equities and public interest support granting preliminary relief. .......... 18

IV.     No injunction bond is necessary here. ............................................................................ 18

CONCLUSION ......................................................................................................................... 19

# TABLE OF AUTHORITIES

*Am. Bev. Ass'n v. City & Cty. of San Francisco,*
   916 F.3d 749 (9th Cir. 2019)................................................................2-3, 16

*Baldwin v. Redwood City,*
   530 F.2d 1360 (9th Cir. 1976)............................................................... 14

*Barahona-Gomez v. Reno,*
   167 F.3d 1228 (9th Cir. 1999).............................................................. 18

*Bay Area Peace Navy v. United States,*
   914 F.2d 1224 (9th Cir. 1990)...................................................... 13, 14-15

*Boos v. Barry,*
   485 U.S. 312 (1988).............................................................................. 6

*Boyer v. City of Simi Valley,*
   978 F.3d 618 (9th Cir. 2020)............................................................... 3, 5

*Brach v. Newsom,*
   6 F.4th 904 (9th Cir. 2021).................................................................. 1

*Bruni v. City of Pittsburgh,*
   141 S. Ct. 578 (2021) ......................................................................... 7

*Bruni v. City of Pittsburgh,*
   941 F.3d 73 (3d Cir. 2019) .................................................................. 8

*Carey v. Brown,*
   447 U.S. 455 (1980)......................................................................... 4, 5, 8

*City of Boerne v. Flores,*
   521 U.S. 507, 534 (1997) .................................................................... 9

*Cohen v. California,*
   403 U.S. 15 (1971)............................................................................ 10

*Collins v. Jordan,*
   110 F.3d 1363 (9th Cir. 1996)). ............................................................ 14

*Comite de Jornaleros de Redondo Beach v. City of Redondo Beach,*
    657 F.3d 936 (9th Cir. 2011)......................................9, 10, 11, 12, 13, 15, 16

*Cornelius v. NAACP Legal Def. & Educ. Fund,*
    473 U.S. 788, 812 (1985) ................................................................ 7

*Cuviello v. City of Vallejo,*
    944 F.3d 816 (9th Cir. 2019)............................................................ 16

*Daily Herald Co. v. Munro,*
    838 F.2d 380 (9th Cir. 1988)............................................................ 13

*Doe v. Harris,*
    772 F.3d 563 (9th Cir. 2014)........................................................ 16, 17

*Drummond v. Robinson Township,*
    9 F.4th 217 (3d Cir. 2021) .............................................................. 14

*Eagle Point Educ. Ass'n/SOBC/OEA v. Jackson Cty. Sch. Dist. No. 9,*
    880 F.3d 1097 (9th Cir. 2018).......................................................4, 7, 8

*Edwards v. City of Coeur D'Alene,*
    262 F.3d 856 (9th Cir. 2001)........................................................ 13, 14

*Edwards v. City of Santa Barbara,*
    150 F.3d 1213 (9th Cir. 1998)........................................................... 15

*Frudden v. Pilling,*
    742 F.3d 1199 (9th Cir. 2014)............................................................ 4

*Hayes v. Harvey,*
    903 F.3d 32 (3d Cir. 2018) ............................................................... 6

*Hill v. Colorado,*
    530 U.S. 703 (2000).................................................................1, 7, 15

*Hoye v. City of Oakland,*
    653 F.3d 835 (9th Cir. 2011)............................................................. 7

*Imdb.com, Inc. v. Becerra,*
    962 F.3d 1111 (9th Cir. 2020)........................................................... 12

*Index Newspapers LLC v. United States Marshal Serv.*,
    977 F.3d 817 (9th Cir. 2020)....................................................................... 14

*Johnson v. Couturier*,
    572 F.3d 1067 (9th Cir. 2009)..................................................................... 3

*Jorgensen v. Cassiday*,
    320 F.3d 906 (9th Cir. 2003)....................................................................... 18

*Klein v. City of San Clemente*,
    584 F.3d 1196 (9th Cir. 2009)..................................................................... 16

*Knox v. Brnovich*,
    907 F.3d 1167 (9th Cir. 2018)..................................................................... 16

*Madsen v. Women's Health Center, Inc.*,
    512 U.S. 753 (1994)..................................................................................... 10

*Marx v. Gen. Revenue Corp.*,
    568 U.S. 371 (2013)..................................................................................... 5

*McCullen v. Coakley*,
    573 U.S. 464 (2014).......................................................3, 7, 8, 10, 11, 13, 14

*Melendres v. Arpaio*,
    695 F.3d 990 (9th Cir. 2012)....................................................................... 17

*Nat'l Inst. of Family and Life Advocates v. Becerra*,
    138 S. Ct. 2361 (2019) ................................................................................ 17

*Napa Valley Publ. Co. v. City of Calistoga*,
    225 F. Supp. 2d 1176, 1195 (N.D. Cal. 2002) ............................13, 14, 15

*Neb. Press Ass'n v. Stuart*,
    423 U.S. 1327 (1975) .................................................................................. 16

*NRA of Am. v. City of Los Angeles*,
    441 F. Supp. 3d 915 (C.D. Cal. 2019)................................................... 3, 8

*Price v. City of Chicago*,
    915 F.3d 1107 (7th Cir. 2019)..................................................................... 7

*Police Dept. of Chicago v. Mosley*,
  408 U.S. 92 (1972)................................................................................. 4

*Reed v. Town of Gilbert*,
  576 U.S. 155 (2015)...................................................................3, 4, 7, 8

*Reed v. Town of Gilbert*,
  707 F.3d 1057 (9th Cir. 2013)............................................................ 4, 7

*Rodriguez v. Maricopa County Cmty. College Dist.*,
  605 F.3d 703 (9th Cir. 2010).............................................................. 11

*Rubin v. Islamic Republic of Iran*,
  138 S.Ct. 816 (2018)............................................................................ 5

*Sammartano v. First Judicial District Court*,
  303 F.3d 959 (9th Cir. 2002).............................................................. 18

*Schenck v. Pro-Choice Network of W.N.Y.*,
  519 U.S. 357 (1997)............................................................................ 16

*Thalheimer v. City of San Diego*,
  645 F.3d 1109 (9th Cir. 2011)............................................................. 3

*United States v. Alvarez*,
  567 U.S. 709 (2012)............................................................................ 16

*United States v. Playboy Entm't Group*,
  529 U.S. 803 (2000)............................................................................ 13

*U.S. WeChat Users All. v. Trump*,
  2020 U.S. Dist. LEXIS 197776, 2020 WL 6271054 (N.D. Cal. Oct. 23, 2020) 18

*Verlo v. Martinez*,
  820 F.3d 1113 (10th Cir. 2016)........................................................... 14

*Watchtower Bible & Tract Soc'y of N.Y., Inc. v. Vill. of Stratton*,
  536 U.S. 150 (2002).....................................................................10, 14

*Whitney v. California*,
  274 U.S. 357 (1927)............................................................................ 18

*Williams-Yulee v. Florida Bar,*
    575 U.S. 433 (2015) ................................................................................................. 9

## STATUTES AND FEDERAL RULES

Cal. Code. Civ. P. § 527.3(a) ........................................................................................ 5

Cal. Code. Civ. P. § 527.3(b)(1) ................................................................................... 5

Cal. Code. Civ. P. § 527.3(c)(1) ................................................................................... 5

Cal. Penal Code § 240 ................................................................................................. 12

Cal. Penal Code § 404.6 ............................................................................................. 12

Cal. Penal Code § 408 ................................................................................................. 12

Cal. Penal Code § 415 ................................................................................................. 12

Cal. Penal Code § 423 ................................................................................................. 12

Cal. Penal Code § 594.39 ................................................................................... *passim*

Cal. Penal Code § 594.39(d) ................................................................................ 1, 5-6

Cal. Penal Code § 602.11 ............................................................................................ 12

Cal. Penal Code § 647c ............................................................................................... 12

Cal. Penal Code § 647c ............................................................................................... 11

Cal. Penal Code § 653.2 .............................................................................................. 12

Fed. R. Civ. P. 65(c) .................................................................................................... 18

## OTHER AUTHORITIES

11A Wright & Miller,
    FEDERAL PRACTICE AND PROCEDURE § 2948.1 (3d ed. Apr. 2020 update) ...... 16

11A Charles Alan Wright, *et al.*,
    FEDERAL PRACTICE AND PROCEDURE § 2954 (3d ed. 2020) ............................. 18

Antonin Scalia & Bryan A. Garner,
    READING LAW: THE INTERPRETATION OF LEGAL TEXTS 174 (2012) ................ 5

## MEMORANDUM OF POINTS AND AUTHORITIES

### Introduction

In response to a single incident in which a fire department response to anti-vaccination activists disrupted an early effort at conducting mass vaccinations, California has imposed an unprecedented 30-foot no-approach bubble zone surrounding anyone exiting or entering any vaccination site in the entire state, when the speaker wishes to engage in "oral protest," "education," or "counseling." To make matters worse, California has exempted a favored kind of "oral protest" from that blanket prohibition: those wishing to protest in conjunction with a labor dispute are welcome to do so. Cal. Penal Code § 594.39(d). It is not enough for California to simply invoke its unquestionably compelling interest in stemming the spread of COVID-19. *Brach v. Newsom*, 6 F.4th 904, 931 (9th Cir. 2021). In the context of fundamental constitutional rights, it must also demonstrate that its legislation is narrowly-tailored to that interest. *Id.* But it cannot. Section 594.39 criminalizes speech that threatens no increased risk of COVID-19 transmission or of disturbing those seeking access to vaccines. And conversely, it simultaneously fails to criminalize other (preferred) expression that does risk COVID-19 transmission or a disturbance outside a vaccination site.

Give an inch and they'll take a mile. A 5-4 Supreme Court decision in 2000 authorizes states to enact narrowly-tailored, content-neutral laws that establish 8-foot "bubble zones" to protect those entering or exiting health-care facilities. *Hill v. Colorado*, 530 U.S. 703 (2000). California has taken that inch as a license to enact an untailored, content-based, 30-foot floating bubble zone to protect those entering or exiting vaccination sites. Complaint ¶ 1. California Penal Code section 594.39 is overbroad, content-based, and facially unconstitutional.

### Factual Background

Plaintiff Rajan Gupta is a 17-year-old California resident passionate both about the spread of accurate information regarding COVID-19 vaccines and about the First Amendment. Defendant Rob Bonta, named in his official capacity as Attorney General for the State of California, is California's chief law enforcement officer charged with enforcement of the

challenged statute, Cal. Penal Code § 594.39, added by the recently-signed bill SB 742.[1] Senate Bill 742 was authored by State Senator Dr. Richard Pan in response to an incident at Dodger's Stadium whereby anti-vaccine protesters temporarily disrupted COVID-19 vaccine distribution. Complaint ¶ 21. Although several state legislators and commentors expressed concern about the bill's constitutionality, Complaint ¶¶ 23-24 & 27, the bill passed both legislative houses of California, receiving approval from the California Senate on September 8, 2021, Complaint ¶ 42. The bill was signed into law by Governor Gavin Newsome on October 8, 2021. Complaint ¶ 43. The law is now codified as Cal. Penal Code § 594.39 and is currently in effect because of the SB 742's urgency clause. *Id.*

Plaintiff wishes to continue his demonstrations in support of COVID-19 vaccines outside of local pharmacies that serve as vaccination sites. *See* Complaint ¶ 57-67. In view of Cal. Penal Code § 594.39's enactment, Plaintiff is now concerned his education activities expose him to criminal prosecution carrying penalties of up to six months jail time and up to a $1,000 criminal fine. Complaint ¶¶ 69-70. These fears have chilled him from continuing to demonstrate and speak in favor of vaccines outside his neighborhood pharmacies and other vaccination sites like grocery stores.

## Legal Standard for Preliminary Injunction

Four factors determine whether a court should issue a preliminary injunction: (1) whether the plaintiff is likely to succeed in the litigation; (2) whether the plaintiff will suffer irreparable harm absent the injunction; (3) the balance of equities; and (4) the public interest. *Am. Bev. Ass'n v. City & Cty. of San Francisco*, 916 F.3d 749, 754 (9th Cir. 2019) (*en banc*). In the context of a First Amendment claim, the test generally turns on the first factor. Where plaintiffs "have a colorable First Amendment claim, they have demonstrated that they will suffer irreparable harm if the [law] takes effect." *Id.* at 758. And "the fact that plaintiffs have raised

---

[1] SB 742 includes four sections, the second of which operates to adds a new section to the penal code, Cal. Penal Code § 594.39. This brief shall site the new Penal Code section, and only cite SB 742 when quoting other sections of the bill, such as the preamble.

serious First Amendment questions compels a finding that the balance of hardships tips sharply in plaintiffs' favor." *Id.* (cleaned up). Likewise, the Ninth Circuit "has consistently recognized the significant public interest in upholding First Amendment principles." *Id.* (internal quotation omitted). "Indeed, it is always in the public interest to prevent the violation of a party's constitutional rights." *Id.* (internal quotation omitted).

To determine whether a First Amendment plaintiff can demonstrate a likelihood of success, the Ninth Circuit has framed a burden-shifting approach where "the moving party bears the initial burden of making a colorable claim that its First Amendment rights have been infringed, or are threatened with infringement, at which point the burden shifts to the government to justify the restriction." *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1116 (9th Cir. 2011). Because of the extraordinary nature of injunctive relief, including the potential for irreparable injury if not granted, a district court may consider evidence outside the normal rules of evidence, including hearsay, exhibits, declarations, and pleadings. *Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009); *see also NRA of Am. v. City of Los Angeles*, 441 F. Supp. 3d 915, 931 (C.D. Cal. 2019) (considering "the text of the Ordinance, the Ordinance's legislative history, and the concurrent public statements made by the Ordinance's primary legislative sponsor" in a First Amendment challenge to find "a strong intent to suppress the speech"). For example, a verified complaint is evidence that may support injunctive relief. *Thalheimer*, 645 F.3d at 1116.

## I.   Gupta is likely to succeed on the merits because California Penal Code section 594.39 is content-based, and even if content-neutral, is not narrowly tailored.

### A.   Section 594.39 is content-based and cannot satisfy strict scrutiny.

"Content-based regulations—those that target speech based on its topic, idea, or message—are presumptively invalid." *Boyer v. City of Simi Valley*, 978 F.3d 618, 621 (9th Cir. 2020). A law is content-based on its face if it "draws distinctions based on the message a speaker conveys" through either "subject matter," "function[,] or purpose." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). In other words, if "enforcement authorities [need] to examine the content

of the message that is conveyed to determine whether a violation has occurred," then the law is facially content-based. *McCullen v. Coakley*, 573 U.S. 464, 479 (2014) (internal quotation omitted). Alternatively, a facially neutral law is *still* content-based if it "cannot be justified without reference to the content of the regulated speech" or was "adopted by the government because of disagreement with the message the speech conveys." *Reed*, 576 U.S. at 163. In other words, "[t]he purpose behind a challenged restriction is the threshold consideration in deciding whether a policy is appropriately neutral." *Eagle Point Educ. Ass'n/SOBC/OEA v. Jackson Cty. Sch. Dist. No. 9*, 880 F.3d 1097 (9th Cir. 2018) (internal quotation omitted). By both measures, Section 594.39 is content-based.

If a law contains a content-based exemption or exclusion, that renders the law itself content-based on its face. Thus, for instance, a general ban on residential picketing becomes unconstitutionally content-based in the presence of an exemption for labor picketing. *Carey v. Brown*, 447 U.S. 455, 460-61 (1980). A general ban on picketing near a school becomes unconstitutionally content-based in the presence of a similar exclusion for labor picketing. *Police Dept. of Chicago v. Mosley*, 408 U.S. 92, 94-95 (1972). A general school uniform policy becomes content-based by the presence of an exemption for uniforms of "nationally recognized youth organizations such as Boy Scouts and Girl Scouts on regular meeting days." *Frudden v. Pilling*, 742 F.3d 1199, 1206-07 (9th Cir. 2014). A general regulation of postsecondary educational institutions becomes content-based by the presence of exemptions, including for "solely avocational or recreational" subject matter. *Pac. Coast Horseshoeing Sch., Inc. v. Kirchmeyer*, 961 F.3d 1062, 1072 (9th Cir. 2020). Where the law "favors particular kinds of speech and particular speakers through . . . exemptions," "[t]hat means [it] necessarily disfavors all other speech and speakers." *Id.* "[T]he government may not decide that speech on certain subject is more (or less) valuable—and therefore more (or less) deserving of First Amendment protection—than speech on other subjects." *Reed v. Town of Gilbert*, 707 F.3d 1057, 1078 (9th Cir. 2013) (Watford, J., dissenting), *rev'd* 576 U.S. 155 (2015).

Section 594.39 is thus content-based because of subsection (d), which stipulates that "It is not a violation of this section to engage in lawful picketing arising out of a labor dispute, as

provided in Section 527.3 of the Code of Civil Procedure." In turn, that section of the code protects, *inter alia*, "giving publicity to, and obtaining or communicating information regarding the existence of, or the facts involved, in any labor dispute . . . ." Cal. Code. Civ. P. § 527.3(b)(1). Thus, under California law, it is a criminal offense to approach within 30 feet of someone seeking to enter a vaccination site (without consent) for the purpose of passing a leaflet or handbill or displaying a sign, or engaging in oral protest, education, or counsel. Cal. Penal Code § 594.39(a), (c)(1). Except it is perfectly fine if the leaflet, handbill, sign, protest, education, or counsel is part of a picketing operation arising out of a labor dispute.

Previously, the Defendant argued that Cal. Penal Code § 594.39(d), is not an exemption at all, but essentially contains unnecessary surplusage to "clarify" that picketing would have never been criminalized by the bill. However, a fair reading of the statute and its history confirms that the legislature intended to preserve the rights of labor protestors to approach people in order to "pass[] a leaflet…display[] a sign to, or engag[e] in oral protest," all of which are ordinary picketing behavior and now criminal within the vicinity of a pharmacy, hospital, or clinic—except when done for matters arising out of labor disputes. Such interpretation flies in the face of the cannons of statutory construction and of the legislative history. "[O]ne of the most basic interpretive canons is that a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void, or insignificant." *Rubin v. Islamic Republic of Iran*, 138 S.Ct. 816, 817 (2018); Antonin Scalia & Bryan A. Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 174 (2012) (No provision should "be given an interpretation that causes it . . . to have no consequence."). This anti-surplusage canon is "strongest when an interpretation would render superfluous another part of the same statutory scheme." *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 385 (2013). The exemption occurred late in the process, months after the original bill's reference to "picketing" had been deleted upon the bill's introduction to the Assembly in June. *See* Complaint, ¶ 29. On September 3, just five days before both chambers passed the bill, the legislature added a specific exemption: "It is not a violation of this section to engage in lawful picketing arising out of a labor dispute, as provided in Section 527.3 of the Code of Civil Procedure." Complaint ¶¶ 39-40. The anti-surplusage

canon is "of particular importance," as here, "where . . . the relevant statutory text was added by amendment." *Hayes v. Harvey*, 903 F.3d 32, 42 (3d Cir. 2018) (*en banc*).

The legislature evidently believed that labor picketing might otherwise violate the text of the bill, and for good reason. Picketing is nothing but a combination of carrying signs, oral protest, and hand billing, and SB 742 criminalizes approaching people for any of these purposes within 100 feet of a vaccination site (which will almost always also be a job site). *Cf. Boos v. Barry*, 485 U.S. 312, 333 (1988) ("'picketing' is most directly implicated in the display clause"). While "picketing" is mentioned by SB 742 and § 527.3, neither law defines the term, and no authority suggests that picketing does *not* embrace approaching individuals for one-on-one conversation. The personal experiences of Plaintiff's attorneys suggest that peaceful picketing *does* generally include picketers explaining their grievances. While Defendant may be correct that lawful picketing does not obstruct access to job sites, demonstrators certainly may approach potential listeners to share their message. Under SB 742, labor disputes—and labor disputes alone—enjoy this Constitutional right within the vicinity of a vaccination site.

*Carey* is on all fours. In *Carey*, the Supreme Court struck down a statute that generally prohibited picketing of residences and dwellings but exempted "'the peaceful picketing of a place of employment involved in a labor dispute.'" 447 U.S. at 457. That plainly "accords preferential treatment to the expression of views on one particular subject; information about labor disputes may be freely disseminated, but discussion of all other issues is restricted." *Id.* at 461. Thus, the Supreme Court held that the statute was not content-neutral because "[t]he permissibility of residential picketing under [the statute] is thus dependent solely on the nature of the message being conveyed." *Id.*[2] Here too; "under the guise of preserving . . . privacy,

---

[2] The law does not fare any better if subsection (d) is *merely* construed as a "speaker-based" exemption for union members or others engaged in a labor dispute. Such exemptions "are all too often content-based regulations in disguise." *Boyer*, 978 F.3d at 621 (internal quotation omitted). As in *Boyer*, the speaker preference of subsection (d) is not "justifiable without reference to the content of the speech" and the law is thus subject to strict scrutiny. *Id.* at 622–23.

[California] has flatly prohibited all nonlabor picketing even though it permits labor picketing that is equally likely to intrude on the tranquility [outside vaccination sites]." *Id.* at 462.

This content-based discrimination immediately distinguishes California's law from the Colorado statute *Hill* upheld. 530 U.S. 703.[3] *Hill* was predicated on a finding of content-neutrality; nothing in *Hill* supports a content-based scheme. *Hoye v. City of Oakland*, 653 F.3d 835, 853 (9th Cir. 2011). There is "no persuasive . . . argument" that a content-based regime could "survive such strict scrutiny." *Id.* As in *Carey*, carving out, for instance, protests against mandatory vaccines for union workers, demonstrates that "privacy is not a transcendent objective": "nothing in the content-based labor-nonlabor distinction has any bearing whatsoever on privacy." 447 U.S. at 465.

Moreover, the distinction between "engaging in oral protest, education, or counseling" and other types of speech (*e.g.*, mundane pleasantries, solicitation, asking for directions) is itself content-based. *Hill* held to the contrary,[4] but that holding "is incompatible with current First Amendment doctrine as explained in *Reed* and *McCullen*." *Price v. City of Chicago*, 915 F.3d 1107, 1117 (7th Cir. 2019); *accord Bruni v. City of Pittsburgh*, 941 F.3d 73, 93 (3d Cir. 2019) ("continued vitality" of *Hill*'s "content neutrality analysis is questionable after *Reed*"). Nevertheless, Gupta realizes this Court and the Ninth Circuit are bound by *Hill* until the Supreme Court abrogates it. So, he does not ask the Court to grant an injunction on this basis, but he preserves the issue for further review in the event that it becomes necessary. *See Bruni v. City of Pittsburgh*, 141 S. Ct. 578 (2021) (Thomas, J., respecting the denial of certiorari) (echoing the concern of *Price*).

Beyond the text of the statute, a law is also non-neutral if it has been "adopted by the government because of disagreement with the message the speech conveys." *Reed*, 576 U.S. at 164 (cleaned up). That verboten purpose—"the desire to suppress a particular point of view"—

---

[3] The Colorado statute in *Hill* prohibited, in relevant part, "knowingly approach[ing] another person within eight feet of such person, unless such other person consents, for the purpose of passing a leaflet or handbill to, displaying a sign to, or engaging in oral protest, education, or counseling with such other person in a public way or sidewalk area within a radius of one hundred feet from any entrance door to a health care facility." 530 U.S. at 707 n.1.

[4] 530 U.S at 720.

manifests itself as full-fledged viewpoint discrimination. *Eagle Point Educ. Ass'n*, 880 F.3d at 1106 (internal quotation omitted); *Cornelius v. NAACP Legal Def. & Educ. Fund*, 473 U.S. 788, 812 (1985). Although the Assembly Committee on Public Safety Report disclaims any hostility to any "one political position relating to vaccines" and avows that "this bill is agnostic to a speaker's message," the historical justifications for the bill (scant though they are) rely entirely on anti-vaccination protests, one at Dodger Stadium, another in Tennessee, and another anti-vaccination online campaign which forced a Nevada-based vaccination organization to cancel two in-person events. Complaint ¶¶ 44-47. Worse still, the original sponsor of the bill, Senator Pan, in the legislative record singled out "anti-vaccination extremists" as the target of the law. *Id.* at ¶ 32. After passage of his bill, he issued a press release that referenced anti-vaccine extremists, anti-vaccine "hordes," an anti-vaccine "mob," and their "propaganda." Press Release, Dr. Richard Pan, Governor Signs Legislation SB 742 to Protect Our Right to Get Vaccinated (Oct. 9, 2021), *available at* https://sd06.senate.ca.gov/news/2021-10-09-governor-signs-legislation-sb-742-protect-our-right-get-vaccinated. On social media as well, he has promoted the passage of his bill with the hashtag "#StopAntiVaxViolence." @DrPanMD, TWITTER, (Oct. 9, 2021), https://twitter.com/DrPanMD/status/1446980984415481857 (last accessed October 18, 2021). Thus, Pan's "off-the-record statements further confirm an overwhelming intent to suppress the message of [anti-vaccination activists]." *NRA of Am.*, 441 F. Supp. 3d at 933. Other legislators' comments confirm that supporters of the bill hoped to chill speech of a particular (anti-vaccination) viewpoint. Complaint ¶¶ 24, 27, 41.[5]

A law is not content neutral when it "cannot be justified without reference to the content of the regulated speech" nor when it is "concerned with undesirable effects that arise from the the direct impact of speech on its audience or listeners' reactions to speech." *Reed*, 576 U.S. at 164 (internal quotation omitted); *McCullen*, 573 U.S. at 481 (same). Section 594.39, concerns itself with preventing "individuals from feeling uncomfortable with unwelcome contact."

---

[5] While plaintiff does not share the antivaccination viewpoint targeted by the legislature, he is prejudiced by the overly broad and censorious law, so has standing to observe that the legislature did not pass a neutral law.

Complaint ¶ 31 (quoting Assembly Committee on Public Safety Report). What contact is not unwelcome? According to that Committee Report, and as expressed through the text of the bill, speech "like incidental conversations or people walking near each other without the purpose of advocacy, protest, or education" "does not implicate the concerns that this bill addresses." *Id.* This justification depends upon listeners' reaction to certain speech content. As such, the law is content-based. "The overbreadth of the [law] further demonstrates that it was designed to do more than prevent disruption of [access to vaccines]." *Eagle Point Educ. Ass'n*, 880 F.3d at 1107.

Because Section 594.39 is content-based, it can only be upheld if the State can satisfy strict scrutiny—that is, a showing that the law is the least restrictive means of meeting a compelling government interest. This is "the most demanding test known to constitutional law" and only the "rare case" can satisfy it. *City of Boerne v. Flores*, 521 U.S. 507, 534 (1997); *Williams-Yulee v. Florida Bar*, 575 U.S. 433, 444 (2015). For the reasons described in the following section, the 30-ft floating bubble zone is by no means narrowly tailored to California's asserted interests in either preventing transmission of COVID-19 or in preventing disruption to those seeking access to vaccines. As in *Carey*, the exemption for speech relating to labor disputes has no "bearing whatsoever on [the government's interest]." 447 U.S. at 465. Transmission of COVID-19 does not stop simply because boisterous chanting involves a labor dispute. Nor is labor picketing less of an impediment to anyone entering a vaccination site than is any other "oral protest." Nor is it any less of a disruption to the serenity outside of a vaccination site. "If some groups are exempted from a prohibition . . ., the rationale for the regulation is fatally impeached." *Id.* at 465 n.9 (internal quotation omitted).

## B. Even if content-neutral, Section 594.39 is not narrowly-tailored, nor does it leave open ample alternative channels of communication.

If Section 594.39 could be construed as a content-neutral "time, place, and manner" regulation, it would be subject to intermediate scrutiny, which requires the government to demonstrate that it is "narrowly tailored to serve a significant governmental interest" and that it "leave[s] open ample alternative channels for communication of the information" that the

speaker wishes to convey. *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 945 (9th Cir. 2011) (*en banc*). Although Gupta agrees that combatting the physical transmission of COVID-19, avoiding disruption of the vaccination process, and preventing disturbances at vaccination sites are all significant interests of California, Section 594.39 is not narrowly tailored to serve those interests nor does it allow speakers an ample alternative to reach their intended audiences.

To begin, "the government bears the burden of showing that the remedy it has adopted does not burden substantially more speech than is necessary to further the government's legitimate interests." *Comite de Jornaleros*, 657 F.3d at 948 (cleaned up). But it cannot do so here; there are several "'obvious examples' of prohibited speech that do not cause the types of problems that motivated the [law]." *Id.* (quoting *Watchtower Bible & Tract Soc'y of N.Y., Inc. v. Vill. of Stratton*, 536 U.S. 150, 166 (2002)). Leafletting, handbilling, or displaying a sign can be all done silently and unobtrusively, without posing any increased risk of aerosolized COVID transmission or disturbance of those entering or exiting a vaccination site. Therefore, "it is difficult, indeed, to justify a prohibition on *all* uninvited approaches of persons seeking the services of the clinic, regardless of how peaceful the contact may be, without burdening more speech than necessary to prevent intimidation and ensure access to the [vaccination site]." *See Madsen v. Women's Health Center, Inc.*, 512 U.S. 753, 774 (1994). On the flip side, rowdy labor picketing and protesting, as well as singing, chanting, or any other manner of rambunctious speech in close quarters can increase the risk of virus transmission. But Section 594.39 permits

such expression as long as it's not an "oral protest," "education," "counseling" or is otherwise related to a labor dispute.[6]

Moreover, imposing a 30-foot bubble zone around individuals near any vaccination site is transparently overinclusive to the state's interests. "No other State" has imposed anything like a bubble-zone around those near vaccination sites, let alone a social distancing measure at a 30 foot radius! *McCullen*, 573 U.S. at 490. California cannot argue a 30-foot radius is based in health concerns, as its own public health department has never mandated, or even recommended, that social distancing greater than six feet was justified.[7] One assemblyman even remarked, without contradiction from anyone else that "there's absolutely no evidence I know

---

[6] Insofar as California might assert it has a "compelling" or even "significant" interest in preventing "individuals from feeling uncomfortable with unwelcome contact," that is doubtful. The First Amendment means that individuals necessarily risk encountering uncomfortable and unwelcome speech in public fora. If people wish to "bombardment of their sensibilities," the customary remedy is "averting their eyes." *Cohen v. California*, 403 U.S. 15, 21 (1971). "The right to provoke, offend and shock lies at the core of the First Amendment." *Rodriguez v. Maricopa County Cmty. College Dist.*, 605 F.3d 703, 708 (9th Cir. 2010). "[I]n public debate our own citizens must tolerate insulting, and even outrageous, speech in order to provide adequate breathing space to the freedoms protected by the First Amendment." *Madsen*, 512 U.S. at 774 (cleaned up).

[7] *See, e.g.*, California Department of Public Health March 13, 2020 Guidance for the Prevention of COVID-19 Transmission in Entertainment Venues, available at https://www.cdph.ca.gov/Programs/CID/DCDC/CDPH%20Document%20Library/C DPH%20Guidance%20for%20Entertainment%20Venues_ADA%20Compliant_3.13.20.pdf (recommending "[s]ocial distancing of six feet per person, particularly between individuals who have come together on a one-time or rare basis and/or who have very different travel patterns such as those coming from multiple countries, state or counties") (last accessed Oct. 17. 2021); *see also* Complaint ¶ 55 (suggesting, but not requiring, employers to recommend masks to employees when distances greater than six feet cannot be maintained outdoors). California has since abandoned social distancing requirements in schools even *indoors*, finding "[r]ecent evidence indicates that in-person instruction can occur safely without minimum physical distancing requirements when other mitigation strategies (e.g., masking) are fully implemented." California Department of Public Health September 22, 2021 COVID-19 Pubblic Health Guidance for K-12 Schools in California, 2021-22 School Year, available at https://www.cdph.ca.gov/Programs/CID/DCDC/Pages/COVID-19/K-12-Guidance-2021-22-School-Year.aspx (last accessed Oct. 17, 2021).

of of—and I've been looking—that you can transmit over 30 feet outside." Complaint ¶ 33. This unprecedented regulation "raise[s] the concern that the [State] has too readily forgone options that could serve its interests just as well, without substantially burdening the kind of speech in which [Gupta and others] wish to engage." *Id.* And as in *McCullen* and *Comite de Jornaleros*, there are myriad other options available for California to combat the types of problems it has identified. To be clear, the Assembly identified three objectionable events across the country: (1) "extremists disrupted vaccination efforts at Dodger Stadium"; (2) "In Tennessee, a woman plowed through a tent in an effort to disrupt vaccine distribution"; and (3) "A Nevada-based vaccination organization had to cancel two in-person events in December [2019] after anti-vaccination activists launched an online harassment campaign against it." Complaint ¶ 44 (quoting Assembly Public Safety Committee Report). There are any number of laws already in the Penal Code that can address these problems without burdening core protected speech. To name a few examples: Cal. Penal Code § 647c proscribes "willfully and maliciously obstruct[ing] the free movement of any person on any street, sidewalk or other public place"; Section 647 proscribes disorderly conduct; Section 240 proscribes assault; and Section 653.2 proscribes using electronic communications to instill fear or harass. The Assembly was also aware, through comments from A Voice for Choice Advocacy, that Penal Code §§ 404.6, 408, and 415 respectively prohibit inciting a riot, unlawful assembly, and disturbing the peace. Complaint ¶ 49 (quoting Assembly Public Safety Committee Report).

Additionally, the Assembly's Appropriations Committee Report recognizes that the new law is "similar" to Cal. Penal Code. §§ 423 *et seq.*, the California Freedom of Access to Clinic and Church Entrances Act. Complaint ¶ 36 (quoting Appropriations Committee Report). However, the differences between the two laws are telling, and reveal that Section 594.39 could easily be more tailored to avoid infringing First Amendment rights. The California Freedom of Access to Clinic and Church Entrances Act proscribes only violent or non-violent "physical obstruction" "intimidat[ion]," "injur[y]," or "interfere[nce]" with those entering churches or clinics. Cal. Penal Code. § 423.2(a)-(d). It does not prohibit pure speech in the form of "oral protest" "education" or "counseling." Similarly, Cal. Penal Code § 602.11 proscribes

preventing an individual from entering or exiting a health care facility, place of worship or school through "physically detaining" the individual or "physically obstructing" his passage. Again, that law steers clear of First Amendment problems by stipulating that "'Physically' does not include speech." *Id.* at § 602.11(b)(1). The Court "cannot ignore the existence of these readily available alternatives." *Comite de Jornaleros*, 657 F.3d at 950; *accord McCullen*, 573 U.S. at 491–93 (discussing alternatives including "existing local ordinances").

There should be no "dispute that speech-neutral remedies exist." *Imdb.com, Inc. v. Becerra*, 962 F.3d 1111, 1125 (9th Cir. 2020). Regardless of any *ipse dixit* contention otherwise, "the government must demonstrate that alternative measures that burden substantially less speech would fail to achieve the government's interests, not simply that the chosen route is easier." *McCullen*, 573 U.S. at 495. But, "to the extent the [State] argues that even these types of laws are ineffective, it has another problem." *Id.* at 493. The legislative record reveals only a single incident in California (and only two others across the nation). All of these involve early mass vaccination events, and the State can "point . . . to no evidence that individuals regularly gather [at neighborhood pharmacies, retailers, or other customary vaccination sites] in sufficiently large groups to obstruct access." *Id.* "For a problem shown to arise only once [in the entire state], creating [a 30-foot bubble zone around individuals at every vaccination site in the state] is hardly a narrowly tailored solution." *Id.* The law applies to each and every neighborhood pharmacy "yet the [State] has introduced evidence of . . . problems [only with respect to a small number of [mass vaccination events]." *Comite de Jornaleros*, 657 F.3d at 949. There is no justification for legislating "in such a sweeping manner." *Id.*; *see also Bay Area Peace Navy v. United States*, 914 F.2d 1224, 1227-28 (9th Cir. 1990) (finding justifications "unrelated to incidents in the San Francisco Bay Area, or in the United States for that matter").[8]

---

[8] Section 594.39 is not only geographically overinclusive, it is also geographically underinclusive to the extent the bill aims to curb direct transmission of disease. COVID-19 does not distinguish between places of transmission. If it can spread outside vaccination sites; it can spread in any other place people may want to protest.

Before restricting speech, "the government must present more than anecdote and supposition." *United States v. Playboy Entm't Group*, 529 U.S. 803, 822 (2000). Nor is "mere speculation" enough. *Bay Area Peace Navy*, 914 F.3d at 1228 (citations omitted). "Specifically, the First Amendment demands that the government provide tangible evidence that speech restrictive regulations are necessary to advance the proffered interest in public safety." *Edwards v. City of Coeur D'Alene*, 262 F.3d 856, 863-64 (9th Cir. 2001) (cleaned up). In *Edwards* for example, the Ninth Circuit concluded that a municipal sign ordinance predicated on a single incident suffered from a "lack of empirical evidence." *Id.* at 865; *see also Napa Valley Publ. Co. v. City of Calistoga*, 225 F. Supp. 2d 1176, 1195 (N.D. Cal. 2002) (Chen, J.) (preliminarily enjoining city's newsrack ordinance where "there appear[ed] to be no 'tangible evidence' justifying the Ordinance's particular limit on the number of newsracks per block"). In another case, the State of Washington claimed that the legislative history had demonstrated the need for a general prohibition on exit polling. *Daily Herald Co. v. Munro*, 838 F.2d 380 (9th Cir. 1988). But "reviewing the legislative hearing," the Ninth Circuit found "no such evidence," only "one instance of an exit pollster blocking voters' entrance to the polling booths" that "the media plaintiffs agree the state can regulate . . . in the polling place." *Id.* at 385 n.8. Likewise here, there is no dispute that activity of the Dodger Stadium protests, if it had transpired as proponents of the bill had mischaracterized it (*see* Complaint ¶ 47), can be regulated under a properly drawn statute (many of which already exist). But California lacks the empirical evidentiary basis for anything remotely similar to Section 594.39. *See also Watchtower Bible & Tract Soc'y*, 536 U.S. at 169 ("there is an absence of any evidence of a special crime problem related to door-to-door solicitation in the record before us"). Indeed, it is wrong for California to effectively "punish[]" "the many peaceful protesters . . . and members of the general public" "for the violent acts of others." *Index Newspapers LLC v. United States Marshal Serv.*, 977 F.3d 817, 834 (9th Cir. 2020). "The proper response to potential and actual violence" is to assure adequate enforcement and "to arrest those who actually engage in such conduct, rather than to suppress legitimate First Amendment conduct as a prophylactic measure." *Id.* (quoting *Collins v. Jordan*, 110 F.3d 1363, 1373 (9th Cir. 1996)).

"[T]he government, not the plaintiff, must prove that a challenged law satisfies intermediate scrutiny." *Drummond v. Robinson Township*, 9 F.4th 217, 231 (3d Cir. 2021). "If [the legislature] could immunize its own rules from review merely by mentioning public safety, heightened scrutiny would be heightened in name only." *Id.* at 233.

"The lack of empirical evidence . . . would be less problematic if the impact on speech were negligible." *Edwards*, 262 F.3d at 865; *cf. Napa Valley Publ. Co.*, 225 F. Supp. 2d at 1194 ("[D]eference to the government's assertion of a substantial interest . . . does not end the Court's inquiry. The reasonableness of the means selected to further those interests may be subject to closer scrutiny."). But the 30-feet bubble zone "effectively destroys speakers' ability to engage in one-on-one communication and leafletting within the restricted areas." *Verlo v. Martinez*, 820 F.3d 1113, 1137 (10th Cir. 2016) (cleaned up). "[W]hile the First Amendment does not guarantee a speaker the right to any particular form of expression, some forms—such as normal conversation and leafletting on a public sidewalk—have historically been more closely associated with the transmission of ideas than others." *McCullen*, 573 U.S. at 488. Indeed, "one-on-one communication" is "the most effective, fundamental, and perhaps economical avenue of political discourse" and "no form of speech is entitled to greater constitutional protection" than leafletting. *Id.* at 488–89 (internal quotation omitted); *see also Baldwin v. Redwood City*, 530 F.2d 1360, 1368 (9th Cir. 1976) (recognizing the importance of inexpensive, effective and "localized" methods of political communication).

Again, as with narrowly tailoring, California bears the burden to show that the statute leaves open ample alternative channels of communication. *Bay Area Peace Navy*, 914 F.2d at 1229. Given the historical uniqueness and significance of one-on-one communication in a public forum, California cannot show Section 594.39 does this. Indeed, a 30-foot bubble zone simply does not permit the speaker "to reach his or her intended audience" at all, much less "in an equally effective manner as the prohibited speech, and without incurring meaningfully greater costs in time or money." *Comite de Jornaleros*, 657 F.3d at 955 (Smith, J., specially concurring); *Napa Valley Publ. Co.*, 225 F. Supp. 2d at 1195 ("[W]here there are numerous and obvious less-burdensome alternatives to the restriction on protected speech, that is certainly a

relevant consideration in determining whether the 'fit' between ends and means is reasonable.") (internal quotation omitted).

California will likely point to *Hill* as upholding a Colorado statute that imposed an *8-foot* bubble zone around those entering abortion facilities. But *Hill* itself distinguished a 15-foot bubble zone that the Court had invalidated in *Schenck v. Pro-Choice Network of W.N.Y.*, 519 U.S. 357 (1997). "Unlike the 15-foot zone in *Schenck*, this 8-foot zone allows the speaker to communicate at a 'normal conversational distance'" *Hill*, 530 U.S. at 726–27 (quoting *Schenck*, 519 U.S. at 377). Ambitiously, California not only tries to reprise the 15-foot zone repudiated in *Schenck*, they try to double it! Given *Schenck*, California's 30-foot bubble zone cannot pass muster. *See Edwards v. City of Santa Barbara*, 150 F.3d 1213, 1216 (9th Cir. 1998) (reasoning from the comparative size of the buffer zones at issue in *Madsen* and *Schenck*).

*Hill* recognizes that "the First Amendment protects the right of every citizen to reach the minds of willing listeners and to do so there must be opportunity to win their attention." *Id.* at 728. But while "signs, pictures, and voice itself can cross an 8-foot gap with ease," a 30-foot gap is a different story. *Id.* at 729; *also Schenck*, 519 U.S. at 377 ("[F]loating buffer zones [of even 15 feet] prevent defendants . . . from communicating a message from a normal conversational distance or handing leaflets . . . ."). Indeed, trying to communicate over such a large gulf would generate the exact problems the statute purports to combat. It would necessitate increasing voice modulation and thereby aerosolizing more particles as well as potentially disturbing the peace with yelling or shouting. It should be clear that this "threaten[s]" "the speaker's ability to communicate effectively." *Bay Area Peace Navy*, 914 F.2d at 1229.

For the same reasons that the statute is overinclusive, it is also infirm as constitutionally overbroad. "In the First Amendment context, a party bringing a facial challenge need show only that 'a substantial number of [a law's] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'" *Knox v. Brnovich*, 907 F.3d 1167, 1180 (9th Cir. 2018); *Comite de Jornaleros*, 657 F.3d at 944. "The overbreadth doctrine exists out of concern that the threat of enforcement of an overbroad law may deter or 'chill' constitutionally protected

speech—especially when the overbroad statute imposes criminal sanctions." *Comite de Jornaleros*, 657 F.3d at 944 (internal quotation omitted).

Because Section 594.39 is both over and underinclusive with respect to California's legitimate interests, and because it is not tethered to a discernible problem, and because it effectively bans timeworn and valuable modes of communication, it cannot satisfy intermediate scrutiny. Therefore, it is unconstitutional even if it construed to be content-neutral, and Gupta is likely to succeed in this litigation.

## II.   Gupta will suffer irreparable harm if the Defendant is not enjoined from enforcing Section 594.39.

"When an alleged deprivation of a constitutional right is involved, such as the right to free speech or freedom of religion, most courts hold that no further showing of irreparable injury is necessary." 11A Wright & Miller, FEDERAL PRACTICE AND PROCEDURE § 2948.1 (3d ed. Apr. 2020 update). Both the Ninth Circuit and the Supreme Court "have repeatedly held that the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Klein v. City of San Clemente*, 584 F.3d 1196, 1207-08 (9th Cir. 2009) (internal quotation omitted; citing cases). "[A]ny First Amendment infringement that occurs with each passing day is irreparable." *Neb. Press Ass'n v. Stuart*, 423 U.S. 1327, 1329 (1975). The "chill on . . . free speech rights—even if it results from a threat of enforcement rather than actual enforcement—constitutes irreparable harm." *Cuviello v. City of Vallejo*, 944 F.3d 816, 833 (9th Cir. 2019). "A colorable First Amendment claim is irreparable injury sufficient to merit the grant of relief." *Am. Bev. Ass'n*, 916 F.3d at 758 (quoting *Doe v. Harris*, 772 F.3d 563, 583 (9th Cir. 2014)).

Section 594.39 was signed into operative law on October 8, 2021. Complaint ¶ 43. Gupta, and other would-be speakers have already suffered constitutional harm. Enforcement of the statute should be enjoined as soon as possible to prevent further irreparable harm.

1 **III.    The balance of equities and public interest support granting preliminary relief.**

2          The remaining two factors to be considered—the public interest and whether other

3 interested persons would be benefited or harmed by an injunction—also weigh in favor of

4 granting relief. Because the statute deters not only Gupta's speech, but that of all Californians,

5 "the balance of equities and the public interest thus tip sharply in favor of enjoining the [law]."

6 *Klein*, 584 F.3d at 1208. "This is especially so because the [statute] under scrutiny imposes

7 criminal sanctions for failure to comply." *Doe v. Harris*, 772 F.3d 563, 583 (9th Cir. 2014). Thus,

8 "[t]here is a potential for extraordinary harm and a serious chill upon protected speech." *Id.*

9 "[I]t is always in the public interest to prevent the violation of a party's constitutional rights."

10 *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (internal quotations omitted); *accord*

11 *Sammartano v. First Judicial District Court*, 303 F.3d 959, 974 (9th Cir. 2002).

12          On the other side of the equation, as described at length above, California enforcement

13 authorities have no shortage of tools to combat legitimately problematic situations of

14 obstructing a vaccination process. If, however, California's true concern is that anti-vaccination

15 propaganda will successfully persuade people not to get vaccinated, the antidote to that is

16 speech that is true. "The response to the unreasoned is the rational; to the uninformed, the

17 enlightened; to the straight-out lie, the simple truth." *United States v. Alvarez*, 567 U.S. 709, 727

18 (2012) (Plurality Op. of Kennedy, J.). That speech can be the government's own, delivered

19 through, for example, a "public information campaign." *Nat'l Inst. of Family and Life Advocates v.*

20 *Becerra*, 138 S. Ct. 2361, 2376 (2019). But the government may not "co-opt" private parties to

21 act as the mouthpiece of the government's preferred message. *Id.* "If there be a time to expose

22 through discussion the falsehood and fallacies, to avert the evil by the processes of education,

23 the remedy to be applied is more speech, not enforced silence." *Whitney v. California*, 274 U.S.

24 357, 377 (1927) (Brandeis, J., concurring).

25

26 **IV.    No injunction bond is necessary here.**

27          Federal Rule of Civil Procedure 65(c) "invest[s] the district court with the discretion as

28 to the amount of security required, if any." *Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (9th

Cir. 1999). "The district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003). Because this is a public-interest case seeking declaratory and injunctive relief and there is no risk of monetary loss to the Defendant from the injunction, the Court should dispense with the bond here. *See* 11A Charles Alan Wright, *et al.*, FEDERAL PRACTICE AND PROCEDURE § 2954 (3d ed. 2020) (collecting cases); *U.S. WeChat Users All. v. Trump*, 2020 U.S. Dist. LEXIS 197776, 2020 WL 6271054 (N.D. Cal. Oct. 23, 2020) (declining to impose a bond for injunction in a non-profit's First Amendment challenge). In fact, the Assembly Appropriations Committee determined that SB 742 would *cost* the state perhaps $150,000 annually to enforce. Complaint ¶ 36.

## **CONCLUSION**

For these reasons, the Court should grant Gupta's motion for preliminary injunction.

Dated: December 16, 2021                    Respectfully submitted,

                                            */s/ Theodore H. Frank*
                                            Theodore H. Frank (SBN 196332)
                                            HAMILTON LINCOLN LAW INSTITUTE
                                            1629 K Street NW, Suite 300
                                            Washington, DC 20006
                                            Voice: 703-203-3848
                                            Email: ted.frank@hlli.org

                                            *Attorney for Plaintiff Ananda Gupta*

<u>PROOF OF SERVICE</u>

I hereby certify that on this day I electronically filed the foregoing Notice of Motion, Motion and Memorandum for Preliminary Injunction using the CM/ECF filing system thus effectuating service of such filing on all ECF registered attorneys in this case.

DATED this 16th of December, 2021.

*/s/ Theodore H. Frank*
Theodore H. Frank
